UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERIE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-185-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| HOUSE OF BEAUTY MEDSPA, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Erie Insurance Company's ("Erie") motion seeking a declaratory judgment against Defendants House of Beauty MedSpa, LLC ("HOB") and Emily Ellis ("Ellis"). [Record No. 10] HOB did not answer the complaint, and Ellis filed an answer *pro se* [Record No. 9], but never responded to Erie's motion.[1] Because Erie is entitled to the latter, its motion will be granted.

The present action is derivative of a matter pending in Madison County Circuit Court. *See House of Beauty Medspa, LLC v. Emily Ellis d/b/a Adelo Beauty*, No. 23-CI-00556 (Madison Circuit Court) (the "underlying action"). Because Ellis holds a business insurance policy with Erie (the "policy"), Erie moves for a declaratory judgment clarifying whether it has a duty to defend or indemnify Ellis in the underlying action against HOB.

---

[1] As discussed in Ellis's supporting memorandum, under the Declaratory Judgment Act, the district court declares the rights and legal relations of the interested parties after considering five factors. *See Nationwide Mut. Fire Ins. Co. v. Creech*, 431 F.Supp.2d 710, 712-13 (E.D. Ky. 2006). However, this analysis is unnecessary if the movant is entitled to summary judgment. [Record No. 10-1, p. 3] Thus, the Court considers the present motion under Rule 56 of the Federal Rules of Civil Procedure.

**I.**

HOB hired Ellis as an independent contractor to perform spa services on July 11, 2023. Four days later, Ellis allegedly tampered with the appointment-booking link on HOB's website that customers use to schedule appointments—redirecting them to a website for a company called "Adelo Beauty"—which Ellis purportedly owns. HOB claims it discovered the alleged tampering around October 2, 2023. But apparently even after HOB discovered the tampering, fired Ellis, and demanded that she fix link, Ellis refused and continued to siphon off HOB's new customers. HOB subsequently sued Ellis in the Madison Circuit Court, raising claims of unfair competition, tortious interference with contractual relations, intentional interference with prospective business relationships, fraud, and unjust enrichment. HOB also sought injunctive relief preventing Ellis from further redirecting customers to Adelo Beauty. Consequently, Erie argues it has no duty to defend or indemnify Ellis in the underlying action.

**II.**

Summary judgment is appropriate when a party shows that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once this burden is satisfied, it shifts to the nonmovant. The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). In other words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2019) (citation and alteration omitted).

The Court affords all reasonable inferences and construes the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. The Court does not weigh the evidence or make credibility determinations but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52 (1986). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The existence of a scintilla of evidence favoring the nonmovant is not sufficient to avoid summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 252). The interpretation of contracts is appropriately determined through summary judgment when there are no other factual issues in dispute. *Ky. Ass'n of Cnty. Workers' Comp. Fund v. Cont. Cas. Co.*, 157 F. Supp. 3d 678, 681 (E.D. Ky. 2016).

### III.

Under Kentucky law, interpretation and construction of an insurance contract is a matter of law for the Court. *Kemper Nat. Ins. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). Further, an insurance contract should be read "according to its plain meaning, its true character and purpose, and the intent of the policies." *Liberty Corporate Capital Ltd. v. Security Safe Outlet, Inc.*, 937 F. Supp. 2d 891, 898 (E.D. Ky. 2013). And when the language of an insurance contract is ambiguous or self-contradictory, it is construed *in favor of the insured*. *Id.* at 897 (citing *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992)). However, the Court will not create an ambiguity where there is none so that it may resolve a dispute in the insured's favor. *See id.* at 898.

In the present matter, the policy between Erie and Ellis provides three areas of coverage: (1) bodily injury and property damages; (2) personal and advertising injury; and (3) barber and beauty professional liability. The undersigned will address each in turn. As an initial matter, Erie acknowledges that Ellis qualifies as the insured under the policy, and that her potential claims fall within the relevant coverage territory. However, the alleged events giving rise to the underlying action are nonetheless not covered by the policy.

### IV.

**A. Bodily Injury and Property Damage:**

Ellis is ineligible for indemnification as well as defense under the policy's bodily injury and property damage section (Coverage A) because the coverage sought is outside the provision's scope. The bodily injury and property damage section (Section I) provides, in relevant part:

> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies … However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply …
> b. This insurance applies to "bodily injury" and "property damage" only if:
> 1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> 2) The "bodily injury" or "property damage" occurs during the policy period;
> …

[Record No. 1-1, p. 6]  Section V of the policy provides definitions for relevant terms.

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[*Id.*, p. 17]

> 17. "Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, **electronic data is not tangible property**.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

[*Id.*, p. 19 (emphasis added).] Finally,

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[*Id.*, p. 18]

The action cannot be classified as a question of "property damage" or "bodily injury" under Section I. First, Ellis obtained a business insurance policy for Adelo Beauty. So "bodily injury" sustained by a person on the basis of *bodily* injury, sickness or disease does not apply to a business entity. Additionally, the harm alleged in the underlying action involves unfair competition, tortious interference with contractual relations, intentional interference with prospective business relationships, fraud, and unjust enrichment—none of which alleges any individuals sustained *bodily* harm. Next, Section I's "property damage" provision is similarly inapplicable because the harm alleged in the underlying action is not physical injury to tangible property—and electronic data is specifically excluded from this definition.

The underlying action alleges tortious interference and fraud among other things, based on Ellis's alleged hijacking of HOB's appointment booking link. The harm flowing from this

accusation does not constitute a physical injury to tangible property because at most, the underlying action alleges Ellis harmed HOB's business by pilfering intangible customer "data".

### B. Personal and Advertising Injury:

Section I. Coverage B provides, in relevant part:

> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies … [h]owever, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

[Record No. 1-1, p. 10]

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[*Id.*, p. 18]

> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

>> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
> b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

[*Id.*, p. 11]

At the outset, the undersigned examines whether the allegations in the underlying action qualify as a "personal and advertising injury." But under the definition contained in the policy, Ellis's alleged actions do not qualify as either. First, the torts she is accused of in the underlying action relate to her redirection of the spa booking link. The injury caused by this purported offense does not constitute false arrest, malicious prosecution, wrongful eviction, slander, libel, or an invasion of privacy.

Thus, the Court proceeds to paragraphs (f) and (g) of the "personal and advertising injury" definition. Whether Erie owes Ellis coverage under those subsections turns on the definition of an advertisement. This is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." [*Id.*] Additionally, "[n]otices that are published include material placed on the Internet or on similar electronic means of communication; and … [r]egarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement." [*Id.*]

The underlying claims do not concern an advertisement under this definition because the booking link with which Ellis allegedly tampered was merely a conduit by which customers could contract for HOB's services, *not* a notice published for the purpose of attracting customers. Further, because the booking link is distinct from the section of HOB's website

where it markets its services to customers, it is not an advertisement under the definition of notice.

But even if the booking link is construed as an advertisement, it fails to meet the standards prescribed in paragraphs (f) and (g). Concerning paragraph (f), the booking link was not "the use of another's advertising idea" in Ellis's advertisement, because the alleged swap did not involve the use of an "idea," it involved the misappropriation of customer traffic itself. That makes this case distinct from *Cap. Specialty Ins. Corp. v. Indus. Elecs., LLC*, 2009 WL 3347112 (W.D. Ky. Oct. 14, 2009). There, the Court held the use and deployment of illicitly obtained customer data could give rise to an advertising injury, but here, there are no specific intangible factors such as mailing lists, marketing techniques, or methods of bidding for jobs that would qualify as an "idea." Finally, while the alleged actions may have constituted an infringement, they did not infringe upon HOB's copyright, trade dress or slogan, instead they infringed upon its customer pipeline.

**C. Barber and Beauty Professional Liability:**

Finally, the "barber and beauty professional liability" section of the policy does not provide coverage. This section states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the rendering of or failure to render professional services as a barber, beautician, cosmetologist, or an individual performing services provided in the operation of a barber, hair, or nail salon. This includes "bodily injury" or "property damage" arising out of:
> 1. Permanent hair waving, hair cutting, styling, trimming, singeing, conditioning, dressing, shampooing, shampoo-tinting and bleaching, hair dyeing or coloring by liquid dyes, henna treatments, or hair crayons.
> 2. Eyelash and eyebrow tinting, coloring, and microblading.  However, we do not cover the administration or application of any dye or coloring that uses coal tar products and/or derivatives to eyelashes or eyebrows other than roux lash

and brow tint, mascara, or eyebrow pencils which are specifically manufactured for eye use.
3. Eyelash and eyebrow cutting, styling, trimming, arching, tweezing, plucking, threading, and lash lifts.
4. The removal of unwanted hair by shaving, the use of wax or a depilatory preparation, and scalp treatments.
5. Face, neck, and body massaging (provided the insured is licensed or certified to perform these services according to the regulations set forth by the state in which you practice).
6. Manicuring and pedicuring, marcel, finger and water waving.
7. Goods and products (including hair and beauty products) of others including their containers used, sold, handled, or distributed by you.

[Record No. 1-1, p. 40]

When evaluated with an eye to the claims included in the underlying complaint, the question of this section's coverage is not a close question. As explained previously, the "bodily injury" and "property damage" are inapplicable to the present scenario. Further, none of the situations above relate to any of the claims raised in the underlying complaint. Instead, they pertain to the day-to-day operations of a medspa. And while they might provide protection from occurrences such as a chafed eyebrow or an unwanted shock from a faulty blow-dryer, they do not offer coverage as the result of an illicit redirection of a customer booking link.

**V.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.  Plaintiff Erie Insurance Company's Motion for Declaratory Judgment [Record No. 10-1] is **GRANTED**.

2.  The Court finds and declares that Plaintiff Erie Insurance Company does not owe Defendant Emily Ellis, doing business as Adelo Beauty, a duty to indemnify or to defend the defendant from or regarding the allegations and claims made in the civil action pending in

the Commonwealth of Kentucky styled, *House of Beauty Medspa, LLC v. Emily Ellis, doing business as Adelo Beauty,* Madison Circuit Court, Case No. 23-CI-00556. It is permitted to withdraw those defenses currently provided to the defendant in that action.

Dated: February 24, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky